THE STATE OF NEBRASKA, EX REL. S. E. HOSTETTER,
v. J. G. HOLDEN ET AL.

1.  Cities of Second Class and Villages.  When a village
    contains more than one thousand and less than twenty-five
    thousand inhabitants, it is the duty of the board of trustees to
    divide it into not less than two wards, and call an election at
    the proper time, for the purpose of electing such officers as the
    statute requires to be elected in a city of the second class.

2.  ———.  A general law creating cities of the second class need
    not be accepted by the municipalities named to make it opera-
    tive upon them.

3.  ———.  Procedure where a city of the second class containing
    more than 1,500 inhabitants desires to adopt village government.

ORIGINAL application for mandamus.

*S. E. Hostetter, pro se.*

*E. F. White,* for respondent.

MAXWELL, CH. J.

This is an application for a mandamus to compel the
defendants, who constitute the board of trustees of Central
City, to divide that place into wards, and give notice that
at the next annual election therein the officers of a city of
the second class will be elected for said municipality.

The relator alleges in his petition that he is a resident
and tax payer of Central City; that at the time the census
was taken, in June, 1885, the returns show that said vil-
lage contained 1,235 inhabitants; that by virtue of the
number of inhabitants said village, under the statute, had
become a city of the second class, and should be organized
and governed by the provisions of law regulating such
cities; that on the 20th of February, 1886, the relator and
other citizens and tax payers of said village requested the

defendants to divide said village into wards, and give notice that at the next annual election city officers would be chosen for said village, but said defendants refused to act in the premises, etc.   The object of the action is to obtain a construction of so much of chapter 14 of the Compiled Statutes as relates to the organization of cities of the second class containing more than one thousand and less than twenty-five thousand inhabitants.

Sec. 1 is as follows: "All cities, towns, and villages containing more than one thousand and less than twenty-five thousand inhabitants shall be cities of the second class, and be governed by the provisions of this chapter, *unless they shall adopt a village government as hereinafter provided*," etc.

Sec. 2 provides that "each city of the second class shall be divided into not less than two nor more than six wards, as may be provided by ordinance of the city council thereof, and each ward shall contain, as nearly as practicable, an equal number of legal voters, and an area as equal to each other as practicable." There are other sections, relating to the officers of the city and their duties, to which it is unnecessary to refer.

It will be observed that the statute declares that all "cities, towns, and villages containing more than one thousand and less than twenty-five thousand inhabitants *shall* be cities of the second class."

Our constitution prohibits special charters to cities, towns, and villages, and, in effect, compels the incorporation, regulation, and government of municipal corporations by general law, hence the division of such corporations into classes, according to the number of inhabitants, as cities of the first class, cities of the second class, villages, etc., and the bestowal upon each class of such powers as the legislature has seen fit. Thus, a town or village containing not less than two hundred inhabitants nor more than fifteen hundred, may be organized as a village, and is invested with

certain rights, powers, and immunities.   When the village contains more than one thousand and less than twenty-five thousand inhabitants, the statute declares it to be a city of the second class, and greatly enlarges its powers.

But it is said that to make the statute effectual it must be accepted by the corporation.   Where there is no provision of law requiring an acceptance of the provisions of the statute, in order to render them operative, no such acceptance is necessary.   The rule which applies to private corporations in that regard has no application to municipal corporations, unless the act of incorporation is made conditional.

In *People v. Morris*, 13 Wend., 337, it is said: "The distinction between public and private corporations is strongly marked, and as to all essential purposes they correspond only in name.   We speak of the erection of a town or county, and the term would be just as appropriate when applied to cities or villages.   They are, severally, political institutions erected to be employed in the internal government of the state.   There is no contract between the government and governed, for but one party is concerned— the public; and the inhabitants upon whom the powers and privileges are conferred are mere trustees, who hold and exercise such powers for the public good.   The only interest involved is the public interest, and no other is concerned in their creation, continuance, alteration, or renewal. *Berlin v. Gorham*, 34 N. H., 266.   *Warren v. Charlestown*, 2 Gray, 104.   *People v. President*, 9 Wend., 351. Dillon Mun. Corp., § 23, and notes.

The laws which establish and regulate municipal corporations are not contracts, but ordinary acts of legislation, and the powers they confer are nothing more than mandates of the sovereign power; and these laws may be repealed or altered at the will of the legislature, except so far as the repeal or change may affect the rights of third parties acquired under them.   Field on Corporations, § 36, and cases cited in notes.

We have no doubt, therefore, that Central City is within the provisions of the statute, and that no acceptance of the same was necessary by the legal voters of said city to make the statute effective.

2d.    While there is no express authority conferred upon the village trustees to divide the city into wards and call an election for the purpose of electing officers of a city of the second class, still such power is clearly implied.    The village government must, from the nature of the case, continue until superseded by that of a city, and by section 50 of the act the board of trustees is required "to give public notice of the time and place of holding each election," and by section 42 it is provided that every trustee shall hold his office for one year, "and until his successor is elected and qualified." · It is evident, therefore, that it is the duty of the board to divide the village into not less than two wards, and call an election for the purpose of electing such officers of a city of the second class as the statute requires.

3d.    Section 53 provides that " whenever any city of the second class containing more than fifteen hundred inhabitants desires to discontinue its organization as a city and organize as a village, and one-fourth of the legal voters of such city shall petition the city council, the council shall cause the same to be published for at least thirty days a notice stating that the question of adopting village government will be submitted at the next annual city election," etc.    The apparent purpose of this provision is to enable those who may be opposed to city government, if they constitute one-fourth of the legal voters, to cause a vote to be taken on the question of continuing the same; in other words, if after a trial for a reasonable time a city government is not satisfactory to at least one-fourth of the legal voters of the city they may petition the city council to submit the question of adopting village government to the legal voters at the next annual city election.    As Central City probably contains more than 1,500 inhabitants at the

present time, the question, if so desired, can be submitted to the legal voters next year; but as the village comes within the provisions of sections 1 and 2 of chapter 14 of the Compiled Statutes, it is the duty of the defendants to comply with the prayer of the petition. The writ will therefore issue as prayed.

WRIT AWARDED.

THE other judges concur.