JAMES P. HOCTOR v. STATE OF NEBRASKA.
3 N. W. (2d) 558

FILED APRIL 24, 1942. No. 31189.

*Eugene D. O'Sullivan, Arthur J. Whalen* and *Ernest S. Priesman,* for plaintiff in error.

*Walter R. Johnson, Attorney General, Rush C. Clarke* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ.

MESSMORE, J.

Plaintiff in error, defendant below, was charged in an in-. formation, filed August 31, 1940, with the crime of embezzlement of $9,110.10, belonging to Douglas county, Nebraska. At the time, he was the duly elected, qualified and acting county clerk of said county.

The charge is, in substance, as follows: That on or about the 29th day of August, 1940, the defendant, "as such officer being charged with the collection, receipt, safe-keeping, transfer, and disbursement of the public money belonging to the county of Douglas, state of Nebraska, then and there unlawfully and feloniously did fraudulently convert to his own use and embezzle of said public money" $9,110.10, "which said money had then and there come into the custody and possession of the said James P. Hoctor, by virtue of his said office * * * a portion of the public money received, controlled, and held by him for safe-keeping, transfer, and disbursement as such county clerk. * * *"

A copy of the information was served personally on the defendant as provided by law. He was arraigned September

12, 1940, and entered his plea of not guilty. November 19, 1940, the county attorney procured leave to amend the information by alleging that the embezzlement occurred between January 1, 1940, and July 26, 1940. Defendant had no knowledge of the amendment. January 6, 1941, the court granted the defendant the right to withdraw his plea of not guilty and file a motion to quash the original information. This motion was overruled. Subsequently, a demurrer to such information was overruled.

The record is in dispute as to whether or not the defendant was arraigned on the amended information; he was not served with a copy thereof, and he complains that he did not have the 24-hour period in which to prepare his defense. The jury was impaneled January 6, 1941; the case proceeded to trial January 7, 1941. The county attorney, in his opening statement, predicated the case on the amended information, as amended; defendant's counsel checked statements made with the first information filed and served on defendant, being the only information of which defendant and his counsel were aware. Objection to the procedure was made, and at the conclusion of argument thereon the court directed that the case proceed on the original information, permitting amendment to the amended information to conform to the original. Request was made to reassert the motion to quash and the demurrer to the information, as finally amended. The request was denied, and the demurrer to the opening statement of the state was overruled. The opening statement was then made by the county attorney on the original information, and the cause proceeded to trial. Objection was made thereto and to the taking of testimony after the first witness was sworn, and a motion of dismissal was made and overruled. The jury returned a verdict convicting the defendant of embezzlement of $8,617.72 from Douglas county, Nebraska. At the conclusion of the testimony, defendant moved for a directed verdict, which was overruled. Motion for a new trial was overruled. The defendant was sentenced to two years in the penitentiary and to pay a fine of $17,235.44. He brings the record of his conviction to this court for review.

Defendant contends that the foregoing rulings of the court constituted prejudicial error, in that the same are violative of section 3, art. I of the Constitution of Nebraska, reading in part: "No person shall be deprived of * * * liberty * * * without due process of law;" violative of section 11, art. I of the Constitution, reading in part: "In all criminal prosecutions the accused shall have the right to * * * demand the nature and cause of accusation, and to have a copy thereof;" and violative of the Fourteenth Amendment to the Constitution of the United States, reading in part: "No State shall * * * deprive any person * * * of liberty * * * without due process of law."

The contention is based on section 29-1802, Comp. St. 1929, which refers to indictments, and provides that the defendant shall be served with a copy thereof and shall not be, "without his assent, arraigned or called on to answer to any indictment until one day shall have elapsed, after receiving in person or by counsel, or having an opportunity to receive a copy of such indictment as aforesaid." In this state, in the absence of an indictment by a grand jury, the county attorney may inform against the defendant, and the same rule applies as stated in the foregoing statute.

The law is settled in this state that the defendant's right to have a copy of the information and one day thereafter to prepare for trial is a substantial right, and a denial thereof is error, if the right has not been waived. *Barker v. State,* 54 Neb. 53, 74 N. W. 427; *Wozniak v. State,* 103 Neb. 749, 174 N. W. 298. It will be noted that the first amendment to the information constituted a change in the dates only and did not change the offense as charged in any of its details. Upon an analysis of the authorities, we conclude the following are applicable to the situation presented by the procedure above set out:

The rule as stated in 23 C. J. S. 245, sec. 942, follows: "If an indictment is amended by the insertion of matter which substantially changes the crime charged, or which includes another person in the charge, accused must be served with a copy of the amended indictment. (In the instant case, the

offense charged was not changed.) However, it has been held that the failure to give accused a copy of the amended indictment was not error where no prejudice was shown. Where the amendment consists of a matter of form only, without effecting any material change, or where matter is stricken out diminishing the aggravating circumstances, a copy of the amended indictment need not be served." While the foregoing rule relates to indictments, it is applicable in this state, where the county attorney, by virtue of law, is an informant, without the assistance of a grand jury except when called. This is reflected by the decisions cited by the state.

In the case of *Razee v. State,* 73 Neb. 732, 103 N. W. 438, the county attorney was permitted to amend the information. The court said: "There can be no substantial objection urged to an amended information which charges the same offense on which the accused has had his preliminary examination." The amendment involved matters of clerical errors and punctuation.

In the case of *Eigbrett v. State,* 111 Neb. 388, 196 N. W. 700, it was claimed that the defendant was deprived of the statutory right to be served with a copy of the information on which he was tried. A copy of the information as originally drawn was served on the defendant, as required by law. The change made by the amendment consisted of indorsing thereon the names of three additional witnesses and in inserting in the county attorney's recital of the date on which he filed the information the year 1923. There was no change in the accusation or in the date of the offense charged, and the original information was in no wise amended to his injury. The court held:

"Accused in a criminal prosecution is entitled to a copy of the information within 24 hours after it is filed in the district court, but he is not, as a matter of right, entitled to an additional copy merely because, with his knowledge, additional names of witnesses are properly indorsed on the information, nor because the information is amended in an immaterial respect in no wise changing the accusation."

In the instant case, the information as finally amended did not change the date of the offense as originally charged. The defendant was served, as provided by law, with a copy of the original information, and, as finally amended, there was no change in the date of the alleged embezzlement. Therefore, he was tried on the offense as stated in the original information.

The offense involved section 60-1014, Comp. St. Supp. 1939, and was charged under section 28-550, Comp. St. 1929. Section 60-1014, *supra,* provides:

"The clerks of the various counties shall charge a fee of twenty cents for each memorandum certificate and thirty cents for each certified copy of a certificate of title. Such fees shall be retained by the said clerks. In addition to the foregoing fees, the clerks of the various counties shall charge a fee of fifty cents for each certificate of title, a fee of twenty-five cents for each notation of any lien on a certificate of title and twenty-five cents for each cancelation of notation of any lien on a certificate of title. The clerks of the various counties shall retain twenty cents of the fifty cents charged for each certificate of title; ten cents for each notation of lien; and ten cents for each cancelation of notation of lien. The remaining thirty cents charged for the certificate of title, the remaining fifteen cents charged for notation of any lien on a certificate of title and the remaining fifteen cents charged for any cancelation of notation of lien shall be paid to the state treasurer to be credited to the state general fund, and, if and when specifically appropriated by the Legislature for that purpose, shall be used during any biennium solely by the Department of Roads and Irrigation to pay the cost of administering this Act. The clerks of the various counties shall remit all funds due the state treasurer under this Act monthly and not later than the fifth day of the month following the collection thereof. The clerks of the various counties shall use all funds derived from fees specified herein for the administration of this Act in their respective counties."

Section 28-550, Comp. St. 1929, provides in part: "Any

officer * * * charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money or any part thereof, belonging to the state or to any county * * * shall convert to his own use * * * any portion of the public money or any other funds, * * * every such act shall be deemed and held in law to be an embezzlement of so much of the said moneys * * * as shall be thus converted, * * * which is hereby declared to be a high crime, and such officer * * * shall be imprisoned * * *" as provided for in said section.

The defendant contends that the fees collected by him and, as shown by the provisions of the statute, to be retained by him for the administration of the act would not constitute an embezzlement as contemplated by section 28-550, Comp. St. 1929. This contention is based on the proposition that no requirements exist in section 60-1014, Comp. St. Supp. 1939, that he pay any amount of fees, so collected and to be retained by him, into the general fund of the county, and, further, that there is no statutory requirement as to the disposition of such fees except as specifically stated therein; that is, for administrative purposes. This being true, none of such fees constitutes public moneys. The county commissioners, by resolution adopted, paid the salaries of the additional assistants required for administration of the act and furnished the supplies therefor. For some period of time defendant turned over such fees to the county treasurer and subsequently failed to do so.

The charge of embezzlement turns on the construction which this court gives to section 60-1014, Comp. St. Supp. 1939. The provisions of the statute are clear in the following respects: Certain fees are to be paid to the county clerk, for the purposes as designated in the act, by the public, who are required to comply with the provisions thereof. While it is true that the act does not state the manner in which the county clerk shall expend the proportionate amount of fees to be retained by him for the administration thereof, it is clear that the act does not provide that such fees constitute additional compensation to be paid to the

clerk. The strictest construction placed on the statute does not warrant such analysis. The fees are paid by the public; the money is used for a public purpose; the county clerk is not privileged to retain the fees as compensation for additional services rendered. Without detailing the law in this respect, we refer to the case of *Mehrens v. Bauman*, 120 Neb. 110, 231 N. W. 701, involving a statute which provided for a fee to be received by the county treasurer as additional compensation for issuing drivers' licenses, and specifically designated that the fee was additional compensation. The same is not true in the instant case for the reasons above set out. The county clerk collected the fees in his official capacity.

The further contention is made by defendant that the county commissioners were merely volunteers and had no statutory authorization to receive any of the fees as shown in section 60-1014, Comp. St. Supp. 1939, for administration purposes, or that any such amounts were required to be paid to the county treasurer; that section 60-1014, *supra,* is a separate and independent act from any other acts involving moneys to be paid by the county clerk to the county treasurer for county government purposes and supersedes such acts. With this contention we cannot agree. The following sections of the statute are still applicable to the defendant as county clerk of Douglas county:

Section 33-135, Comp. St. 1929, contains the following provision: "All county officers * * * whose offices are salaried offices and who are to be paid out of the county general fund shall pay over the funds received from fees to the county treasurer on the first Tuesday in January, April, July and October of each year, and shall take the receipt of the county treasurer therefor."

Section 26-124, Comp. St. 1929, provides: "All persons chargeable with money belonging to any county shall render their accounts to and settle with the county board at the time required by law, and pay into the county treasury any balance which may be due the county, take duplicate receipts therefor, and deposit one of the same with the clerk of the county within five days thereafter."

Section 26-1002, Comp. St. 1929, provides: "It shall be the general duty of the county clerk: First. To record in a book provided for that purpose all proceedings of the board; Second. To make regular entries of their resolutions and decisions in all questions concerning the raising of money; Third. To countersign all warrants issued by the board and signed by its chairman; Fourth. To preserve and file all accounts acted upon by the board, with their action thereon; and he shall perform such special duties as are required of him by law. * * * "

It will be noted that section 33-135, *supra,* uses the language "shall pay over the funds received from fees to the county treasurer." Section 60-1014, Comp. St. Supp. 1939, designates that the moneys paid by the public for the purpose contained in the act are fees.

Defendant cites and quotes at length from the case of *Moore v. State,* 53 Neb. 831, 74 N. W. 319, as being conclusive of his right to retain the fees as evidenced by section 60-1014, *supra,* for administering the act. A careful reading of the foregoing case discloses an entirely different situation from that in the case at bar. As disclosed in *Moore v. State, supra,* a statute was passed in 1873, relating to insurance companies, wherein each of said companies or associations, etc., was required to pay fees for filing and examination of the first application of any company and the issuing of the certificate of license thereon ($50), which should go to the auditor. Other fees were mentioned. It was under this section that the moneys alleged to have been embezzled were paid to Moore as state auditor of public accounts. In 1875 the Constitution went into effect, and section 24, art. V thereof, after fixing the salaries of the executive officers, provided that "They shall not receive to their own use any fees, costs, interest upon public moneys in their hands, or under their control, perquisites of office or other compensation, and all fees that may hereafter be payable by law for services performed by an officer, provided for in this article of the Constitution, shall be paid in advance into the state treasury." Moore was prosecuted under section 124 of the

Criminal Code, which is now section 28-550, Comp. St. 1929. It will be noted that the statute involved, under which Moore received the fees, specifically states that such fees are to go to the auditor. The constitutional provision changed or modified the statute to such extent that the fees were to be paid in advance into the state treasury. It was held that under the circumstances said section 124 (now section 28-550) did not apply to Moore. The court said (p. 848) : "To hold that the auditor is a person charged with the collection, receipt, safe-keeping, transfer, or disbursement of the public money, when the law expressly forbids him to receive it or handle it, would certainly go beyond the plain import of the words of the statute, and create a crime by construction in the plainest violation of the law." Section 124 of the Criminal Code (now section 28-550, *supra*), the court held, applied only to officers or persons charged by law with the collection, receipt, safe-keeping, transfer or disbursement of public moneys, and that the auditor of public accounts was not, as such officer, charged with the collection, receipt, etc., of public moneys.

In the instant case, section 60-1014, Comp. St. Supp. 1939, specifically required the defendant to receive the fees, as designated therein, in his official capacity. The law made it his duty to do so. There was no such language that the fees should go to him, and no subsequent constitutional provision modifying section 60-1014, *supra*. We believe it is unnecessary to point out further distinction between the two cases. The inapplicability of the *Moore* case to the instant case is apparent.

When the defendant became county clerk he was required to look to the statute for his compensation for the services to be performed by him in his official capacity, and if the legislature imposes by statute additional duties upon him and provides no additional compensation therefor, he, in his official capacity, is obligated to perform such services without additional compensation. *Nuckolls County v. Peebler*, 65 Neb. 356, 91 N. W. 289.

We conclude that the defendant, as county clerk, was

authorized to collect the fees, as provided in section 60-1014, Comp. St. Supp. 1939, and that such fees are public moneys; nor is any portion thereof, to be retained by him for administration of the act, additional compensation, but they are to be used for a public purpose. In his official capacity he is required to account for public funds and to pay such funds to the county treasurer, as provided by law. This would be true in the event the resolution of the county commissioners, referred to herein, was invalid. Therefore, the fact that defendant converted such fees to his own use without paying for any part of the administration of the act, knowing that the county commissioners were paying for such administration, and abiding by their resolution and paying fees into the public treasury for any period of time, would indicate clearly that section 28-550, Comp. St. 1929, is the applicable section under which to charge embezzlement under the circumstances as here existing.

We deem it unnecessary to set out any statement of the evidence, in view of our holding, and the claim of defendant that he paid into the county treasury fees in excess of the amount he is alleged to have embezzled, and has a credit with the county, is immaterial. The evidence with reference to the bank accounts is also immaterial.

Defendant contends that the court, in failing to give certain requested instructions, committed error. The instructions requested were upon the defendant's theory of the case, that he had a right to retain the fees for administrative purposes and that there can be no embezzlement. We have read with care the requested instructions and conclude that there was no error in their rejection.

The defendant further contends that the court erred in giving certain instructions, stating that defendant consistently used funds belonging to the state of Nebraska, when, in fact, it had been admitted that all funds due the state had been paid to the state. While the court might have eliminated this language and confined the instruction to funds due the county, we conclude, after reading all of the instructions and construing them together and as a whole, that they

properly state the issues involved and do not constitute prejudicial error.

The defendant attacks section 28-550, Comp. St. 1929, contending that said section is meaningless and a nonentity and does not define any felony known as embezzling public moneys, or any other offense. This matter was never presented to the trial court for its determination. However, inasmuch as it involves a statute which affects the liberties of individuals, we will determine this assignment of error.

The defendant calls our attention to a number of cases in this state announcing the law with reference to criminal statutes, as follows: In this state all public offenses are statutory; no act is criminal unless the legislature has, in express terms, declared it to be so, and no person can be punished for any act or omission which is not made penal by the plain import of the written law. It is elementary that penal statutes are inelastic and must be strictly construed. *Macomber v. State*, 137 Neb. 882, 291 N. W. 674, and cases cited therein.

Applying the above rule and in furtherance of the contention, the defendant states that all statutes of this state, in force and effect prior to the adoption of the Code revision of 1913, were supplanted and repealed and ceased to have any force and effect without the readoption of the revision of 1913, known as Revised Statutes of Nebraska for 1913. In 1911 the legislature provided for a commission for revision and recompilation of the laws of Nebraska. Laws 1911, ch. 166. This commission was to revise, consolidate and compile the general laws, the Code of Civil Procedure and the Code of Criminal Procedure of the state of Nebraska, and among its duties the commission was required to "bring together all statutes and parts of statutes relating to the same subject-matter * * * supply apparent omissions, reconcile contradictions and note imperfections in general; but such commissioners shall have no authority to make any change in any act or part of any act. * * *" Laws 1911, ch. 166, sec. 2. Therefore, the Revised Statutes of 1913 being a statutory or a true revision, it supplants and takes the place

of the laws that existed in Nebraska prior to the adoption of the revision, and repeals all laws in conflict therewith.

In support of the above contention, the cases of *In re Estate of Berg,* 139 Neb. 99, 296 N. W. 460, and *Pinn v. State,* 107 Neb. 417, 186 N. W. 544, are cited, the contention being that in the *Berg* case it was held the revision of 1913 was a true revision and supplanted and repealed all laws and existing laws that existed theretofore, and reinstated all laws that had been repealed which were included in the commissioners' report to the legislature. The *Berg* case involved section 584 of the Civil Code, which had been repealed, probably inadvertently, in 1905. Laws 1905, ch. 174. The revising commission included the repealed section in its report. The court held that by adopting the report of the commission, directing the compilation of the Revised Statutes of 1913, containing the repealed section, such section was made the law.

The controversy in the instant case arises over the elimination, in the Revised Statutes of 1913, of the word "if" before the word "any" in section 28-550, Comp. St. 1929. The word "if" before the word "any" appeared in the original act adopted in 1873 as section 124, and without the word "if" the provision of the statute would indicate that no offense was charged for embezzlement of public moneys, but rather that a public officer would be permitted to embezzle funds.

Without detailing the history of the statute in question, it must be conceded that at the time of the prosecution of the defendant the word "if" before the word "any" was absent therefrom, and this was also true when the statutes were revised in 1913, as claimed by the defendant. It is not denied that the court has the power to look at former statutes in an attempt to clarify the meaning of the words contained therein, and it is further admitted that the court is not permitted to add the word "if" in the statutes involved in order to make it state an offense. However, a reading of the statute without the word "if" shows that it does state the offense of embezzlement of public moneys.

Section 28-550, Comp. St. 1929, provides, in part: "Any

officer * * * charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money * * * shall convert to his own use, or to the use of any other person * * * any portion of the public money * * * or if any person shall advise, aid or in any manner participate in such act, every such act shall be deemed and held in law to be an embezzlement (embezzlement is a criminal offense; the statute discloses who shall be held to have embezzled), * * * which is hereby declared to be a high crime," and such officer shall be punished according to law.

The following rule is of assistance: "A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable. * * * No presumption arises from changes of this character that the revisers or the legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears." 59 C. J. 894.

Obviously, there was no intent on the part of the commissioners, appointed by the state to perfect the revision and codification of 1913, to authorize embezzlement by public officers, and the rule applies that there was no intention to change the law. However, as we have pointed out, even in the absence of the word "if," the statute involved states an offense which is sufficient to determine this assignment of error, and we hold that defendant's contention that section 28-550, Comp. St. 1929, is meaningless and a nonentity in failing to state the offense of embezzlement is without merit.

For the reasons given in this opinion, the verdict of the jury and the judgment of the court thereon are

AFFIRMED.